RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0175P (6th Cir.)
File Name: 04a0175p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

*v.*

No. 02-6407

CHALMERS BROWN,
      *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 02-20059—Samuel H. Mays, Jr., District Judge.

Argued: February 5, 2004

Decided and Filed: June 10, 2004

Before: NELSON, GILMAN, and ROGERS, Circuit
Judges.

_____

## COUNSEL

**ARGUED:** Stephen B. Shankman, OFFICE OF THE
FEDERAL PUBLIC DEFENDER FOR THE WESTERN
DISTRICT OF TENNESSEE, Memphis, Tennessee, for
Appellant. David N. Pritchard, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.
**ON BRIEF:** Stephen B. Shankman, April R. Goode,

OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR
THE WESTERN DISTRICT OF TENNESSEE, Memphis,
Tennessee, for Appellant. John T. Tibbetts, ASSISTANT
UNITED STATES ATTORNEY, Memphis, Tennessee, for
Appellee.

_____

## OPINION

_____

DAVID A. NELSON, Circuit Judge. Under the federal
sentencing guidelines, a criminal defendant may be given a
prison sentence exceeding the range prescribed in the
guidelines manual's sentencing table if the criminal history
category to which the defendant has been assigned does not
adequately reflect his past conduct or the likelihood that he
will commit additional crimes. See the Sentencing
Commission's Policy Statement at U.S.S.G. § 4A1.3.

The appropriate extent of an upward departure can often be
measured by reference to the sentence range for a person in
the next criminal history category above the defendant's. But
where a defendant's criminal record has earned him so many
criminal history points that he is already in the highest of the
six criminal history categories created by the guidelines, the
Policy Statement directs the sentencing court to "structure"
the departure by moving to successively higher offense levels
(the defendant's offense level being the other variable in the
sentencing table) until the court comes to "a guideline range
appropriate to the case." *Id.*

The defendant in the case at bar, who had at least 13 prior
felony convictions, pleaded guilty to a charge of knowingly
possessing a certain Norberto Arizmendi shotgun in violation
of 18 U.S.C. § 922(g), the statute that criminalizes possession
of a firearm by a convicted felon. The defendant's lengthy
criminal record made him a prime candidate for an upward
departure from the sentence range (168-210 months) specified

in the table. Employing a methodology endorsed in *United States v. Williams*, No. 99-6030, 2000 WL 1872059 (6th Cir. Dec. 15, 2000), *cert. denied*, 532 U.S. 988 (2001) (unpublished), the district court sentenced the defendant to imprisonment for a term of 360 months.

We cannot tell whether the sentence range (360 months to life) produced by the *Williams* methodology was one which the district court, in the exercise of its independent judgment, considered appropriate to the particular circumstances of this particular case. We shall therefore vacate the challenged judgment and remand the case for resentencing.

## I

At 10:15 on the morning of November 25, 2001, according to a subsequently prepared presentence investigation report, three robbers broke into Tara Thompson's house on Laclede Avenue in Memphis, Tennessee. Inside the house were Ms. Thompson, her boyfriend Tallen Williams, and three children ranging in age from three to 14.

One of the intruders — described by Ms. Thompson as a bearded man about 6 feet tall, weighing about 160 pounds and wearing a homemade ski mask — was said to have been armed with a shotgun of the "pistol pump" variety. A second intruder — a "short, chubby" man, not wearing a mask — had a small handgun. (Chalmers Brown, the defendant in the case at bar, stands 5'6" in height and weighs 187 pounds, according to the presentence report; he would thus seem to bear a closer resemblance to the short, chubby man with the handgun than to the tall, thin man with the shotgun.) The third intruder, who wore a black ski mask, was apparently unarmed.

Ms. Thompson called 911 while the intruders were kicking in her front door. Once inside, according to a statement Ms. Thompson was to give the police, the short, chubby man pointed his handgun at her and her children and asked where

her money was. The tall, thin man likewise demanded money. In the course of the ensuing tumult, Ms. Thompson's statement says, the oldest child was repeatedly hit in the head with the shotgun and the weapon was fired once. The blast hit Ms. Thompson's dog in the foot, and some of the pellets struck Ms. Thompson in the face and arm.

As the police were arriving in response to the 911 call, the robbers escaped with a Playstation and some money Mr. Williams had in his pants. Two days later a crime stoppers tip implicated Chalmers Brown (the defendant herein) and two other suspects. Shown a photo-array, according to the presentence report, Ms. Thompson "positively identified Chalmers Brown as the person who shot her, assaulted her family and shot her dog." (The presentence report does not comment on the anomalous circumstance that Ms. Thompson's statement to the police described the masked man with the shotgun as being much taller and thinner than Mr. Brown; one wonders if in fact Ms. Thompson did not simply identify the bare-faced Mr. Brown as a member of the trio, without claiming that he personally wielded the shotgun.)

On the day after Ms. Thompson identified Mr. Brown's picture, a police officer spotted Brown getting into his Cadillac automobile. Mr. Brown was detained, and a search of the Cadillac turned up a black ski mask behind the driver's seat and a loaded shotgun in the trunk. Mr. Brown admitted ownership of the shotgun.

Charged with both state and federal crimes, Mr. Brown found himself moved along the federal track first. A superseding indictment handed up by a federal grand jury in April of 2002 charged him with three counts of violating the felon-in-possession statute, 18 U.S.C. § 922(g). Mr. Brown pleaded guilty to the first count of the superseding indictment pursuant to a Rule 11 plea agreement. (It was the first count, as we have indicated, that charged him with illegal possession of a Norberto Arizmendi shotgun.) The other two counts were dismissed by the government.

The probation officer who prepared Mr. Brown's presentence investigation report originally assumed that the Norberto Arizmendi shotgun was the same weapon with which Ms. Thompson and her son and dog had been assaulted. Based on this assumption, and using the 2001 edition of the guidelines manual, the probation officer assigned Mr. Brown an offense level of 31. In a subsequent addendum to the presentence report, however, the officer noted that whereas Ms. Thompson had described the shotgun used in the robbery as a "pistol pump" weapon, the Norberto Arizmendi referred to in Count One of the indictment did not have a pistol pump feature. The addendum recommended that Brown's total offense level be set at 30, rather than 31, unless the United States could prove that the weapon recovered at the time of the arrest was the same one used during the home invasion.

The government could not prove that the weapons were one and the same, and the district court therefore accepted the revised computation of Brown's offense level. Under the manual's sentencing table — an abbreviated version of which is included as an appendix to this opinion — a defendant who has earned a place in Criminal History Category VI and who has an offense level of 30 is assigned a guideline sentence range of 168-210 months.

Prior to issuance of the addendum to the presentence report, the government had moved for an upward departure from the range (188-235 months) specified in the original report. The basis for the motion was that while a minimum of only 13 criminal history points suffices to place a defendant in Criminal History Category VI, Mr. Brown had amassed more than four times that number of points — 53, to be precise. Category VI thus failed adequately to reflect Mr. Brown's past criminal behavior, the government argued.

The district court agreed. The court also accepted the methodology proposed by the government for determining the extent of the upward departure. That methodology, as we have said, was one approved by the Sixth Circuit's unpublished decision in the *Williams* case, available electronically at 2000 WL 1872059.

The sentencing court in *Williams* used a criminal history scale of its own creation, with phantom categories designed to trigger incremental increases in the defendant's offense level. See *Williams*, 2000 WL 1872059, at **2. The *Williams* methodology provides for no increase in the offense level of a defendant whose criminal history score is 15 or less. A criminal history score of 16 to 18 points produces a one-level increase in the offense level. A criminal history score of 19 to 21 leads to a two-level increase, and higher brackets of criminal history points lead to further increases in the offense level. A criminal history score of 48 or more yields an increase of 10 in the offense level.

Accepting the *Williams* methodology as "persuasive and logical," the court below treated Mr. Brown as having an offense level of 40 rather than 30. As can be seen from a glance at the sentencing table set forth in the appendix, *infra*, the range prescribed for a defendant in Criminal History Category VI who has an offense level of 40 is imprisonment for a term in the range of 360 months to life.

The government sought to have the 39-year-old Mr. Brown sentenced to life imprisonment. The district court, however, opted to impose a sentence — 30 years — at the bottom of the guideline range determined under *Williams*. Mr. Brown has perfected a timely appeal from this 30-year sentence.

II

In general, a departure is permissible if the sentencing court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration" by the guidelines. 18 U.S.C. § 3553(b). Thus U.S.S.G. § 4A1.3 stated (before adoption of a change in wording not relevant here) that "[i]f reliable information

indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range."

Mr. Brown does not deny that an upward departure was warranted in light of his remarkable criminal history. He contends, rather, that it was inconsistent with U.S.S.G. § 4A1.3 for the district court to determine the extent of the departure by employing jerry-built criminal history categories not tailored to his individual case.

Although § 4A1.3 is designated a policy statement, rather than a guideline, it is binding on the district courts. See *Stinson v. United States*, 508 U.S. 36, 42 (1993). Failure to follow § 4A1.3 constitutes an incorrect application of the sentencing guidelines, see *id.*, and is thus an abuse of discretion. See *United States v. Valentine*, 100 F.3d 1209, 1210 (6th Cir. 1996).

The 2001 edition of the Sentencing Guidelines Manual contained a passage (subsequently the subject of minor changes in wording) that read as follows:

"Where the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case."

(The reader who does not have a clear mental image of the configuration of the matrix to which the foregoing passage alludes may wish to examine the sentencing table at this juncture. See Appendix, *infra*.) "[W]hen the court cannot

move horizontally across the guideline grid because there are no criminal history categories greater than VI," as we put it in *United States v. Thomas*, 24 F.3d 829, 834 (6th Cir.), *cert. denied*, 513 U.S. 976 (1994), "[the court] should move vertically down the offense level axis until it locates a range which it deems appropriate to the facts of the case."

Our earlier decision in *United States v. Carr,* 5 F.3d 986, 994 (6th Cir. 1993), had suggested that § 4A1.3 requires a district court to consider the sentencing ranges that would result from an increase of one offense level, two offense levels, and so on, increasing the defendant's offense level by more than one only if the court "demonstrate[s] why it found the sentence imposed by each intervening level to be too lenient." *Carr*, 5 F.3d at 994.[1] See also *United States v. Gray*, 16 F.3d 681, 683 (6th Cir. 1994). But *Thomas* held that *Carr*'s interpretation of § 4A1.3 did not "require[] a sentencing court to explain formalistically, gridblock-by-gridblock, why each intervening range is inappropriate." *Thomas*, 24 F.3d at 835.

"We read [§ 4A1.3] to require a court to continue moving down offense-level ranges only until it finds a range which would provide an appropriate sentence for the defendant, but no further. We do not read this to require the court to move only one level, or to explain its rejection of each and every intervening level. The language indicates quite clearly that the court should continue to consider ranges 'until it finds' an appropriate sentence for the defendant before it, but nothing in § 4A1.3 calls for a more detailed, gridblock-by-gridblock approach . . . ." *Id.* at 834.

---

[1] *Carr*'s statements as to how a sentencing court is to effect a multi-level increase in a defendant's offense level may be regarded as dicta, given that we were not reviewing such an increase in that case. The departure issue in *Carr* was whether the district court had erred by hypothesizing a criminal history category greater than VI rather than increasing the defendant's offense level. See *Carr*, 5 F.3d at 994.

"The approach required of the sentencing court when departing beyond Criminal History Category VI," *Thomas* holds, "is to consider carefully all of the facts and circumstances surrounding the case which affect the departure, and from them determine an appropriate sentence for the particular defendant." *Id.* at 835. If a court selects an appropriate sentence range in this manner, and if the court increases the defendant's offense level no more than necessary to arrive at that range on the sentencing table, § 4A1.3 is satisfied.

This is not to say that § 4A1.3 prohibits a district court from using the *Williams* construct (or some similar expedient) as a reference point when determining the extent of an upward departure. But the use of such a construct – particularly one developed by a different judge in a different case – cannot replace the exercise of the court's independent judgment. If a district court chooses to follow the *Williams* approach in the beginning, the resultant sentence range is not to be treated as definitive; at the end of the day the court must decide, in light of all the facts and circumstances of the particular case before it, whether the range in question is "appropriate to the case." (As *Thomas* makes clear, the process of "moving incrementally down the sentencing table to the next higher offense level," see U.S.S.G. § 4A1.3, is simply a means to an end; the whole point of the exercise is to "find[] a guideline range appropriate to the case." *Id.*) If, having elected to use the *Williams* methodology as a navigational aid, the court finds that the range to which that methodology points is not "a guideline range appropriate to the case," the court must select a different range.

In the case at bar, it seems to us, the record does not reflect an independent determination by the district court that the *Williams* range is appropriate for this particular case in light of the particularized facts of the case. The court knew, to be sure, that it was not required to use the *Williams* methodology; the court twice referred to *Williams* as an "example." But after choosing to apply *Williams*, the court

accepted the resulting sentence range without comment. As far as the record indicates, the court gave no independent thought to whether that range was appropriate under the individual circumstances of Mr. Brown's case.

It is true that, in rejecting the government's recommendation of a sentence of life in prison, the district court said that "360 months is adequate punishment for these offenses." But we do not interpret this comment as a determination that 360 months to life is an appropriate sentence range. The question is whether a departure to a range starting below 360 months would be adequate and appropriate for Mr. Brown's offense. That is a question the court does not seem to have addressed.

The sentence is **VACATED,** and the case is **REMANDED** for further proceedings not inconsistent with this opinion.

# APPENDIX

SENTENCING TABLE

(in months of imprisonment)

**Criminal History Category (Criminal History Points)**

| OFFENSE LEVEL | I (0-1) | II (2 or 3) | III (4, 5, 6) | IV (7, 8, 9) | V (10, 11, 12) | VI (13 OR MORE) |
|---|---|---|---|---|---|---|
| 1 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 |
| 2 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 | 1-7 |
| 3 | 0-6 | 0-6 | 0-6 | 0-6 | 2-8 | 3-9 |
| ⇓ | | ⇓ | | | ⇓ | |
| *** | | *** | | | *** | |
| ⇑ | | ⇑ | | | ⇑ | |
| 30 | 97-121 | 108-135 | 121-151 | 135-168 | 151-188 | 168-210 |
| 31 | 108-135 | 121-151 | 135-168 | 151-188 | 168-210 | 188-235 |
| 32 | 121-151 | 135-168 | 151-188 | 168-210 | 188-235 | 210-262 |
| 33 | 135-168 | 151-188 | 168-210 | 188-235 | 210-262 | 235-293 |
| 34 | 151-188 | 168-210 | 188-235 | 210-262 | 235-293 | 262-327 |
| 35 | 168-210 | 188-235 | 210-262 | 235-293 | 262-327 | 292-365 |
| 36 | 188-235 | 210-262 | 235-293 | 262-327 | 292-365 | 324-405 |
| 37 | 210-262 | 235-293 | 262-327 | 292-365 | 324-405 | 360-life |
| 38 | 235-293 | 262-327 | 292-365 | 324-405 | 360-life | 360-life |
| 39 | 262-327 | 292-365 | 324-405 | 360-life | 360-life | 360-life |
| 40 | 292-365 | 324-405 | 360-life | 360-life | 360-life | 360-life |
| 41 | 324-405 | 360-life | 360-life | 360-life | 360-life | 360-life |
| 42 | 360-life | 360-life | 360-life | 360-life | 360-life | 360-life |
| 43 | life | life | life | life | life | life |