**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0354n.06

**No. 09-4267**

FILED

*May 25, 2011*

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**UNITED STATES OF AMERICA,**

    **Plaintiff-Appellee,**

**v.**

**RYSHEEN SHARP,**

    **Defendant-Appellant.**

                             /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO**

---

**BEFORE:**     **DAUGHTREY, MOORE, and CLAY, Circuit Judges.**

    **CLAY, Circuit Judge.** Defendant Rysheen Sharp pled guilty to one count of making and forging an obligation of the United States in violation of 18 U.S.C. §§ 471 and 472; one count of manufacturing counterfeit securities in violation of 18 U.S.C. §§ 471 and 472; and one count of conspiracy with intent to possess counterfeit obligations of the United States in violation of 18 U.S.C. § 371.

    Defendant subsequently made a motion to withdraw his guilty plea. The district court denied Defendant's motion to withdraw his guilty plea, and sentenced Defendant to 51 months of incarceration followed by three years of supervised release. The district court ordered Defendant's sentence to be served consecutively with an additional sentence of 24 months of incarceration for

violation of his supervised release for a prior federal counterfeiting conviction. The district court further ordered that Defendant's payment of restitution for his prior counterfeiting conviction be a condition of his supervised release in this case.

Defendant appeals the district court's denial of his motion to withdraw his plea, the procedural and substantive reasonableness of his sentence, and the district court's order that Defendant pay restitution for his prior conviction as a precondition of his supervised release in this case.

For the reasons stated below, we **AFFIRM** the district court's judgment.

## STATEMENT OF FACTS

Between April 1, 2008 and October 1, 2008, Defendant Rysheen Sharp, and two co-defendants not involved in the instant appeal, Tyrone Davis, and Fatima Flowers, were involved in a conspiracy to manufacture counterfeit United States currency. Defendant's involvement in the conspiracy consisted of printing and manufacturing counterfeit currency, possessing counterfeit bills in his wallet and apartment, and advising his co-defendants regarding the quality of the counterfeit currency they were manufacturing.

On January 13, 2009, Defendant and his two co-defendants were indicted, and charged with one count of making and forging an obligation of the United States in violation of 18 U.S.C. §§ 471 and 472; one count of manufacturing counterfeit securities in violation of 18 U.S.C. §§ 471 and 472; and one count of conspiracy with intent to possess counterfeit obligations of the United States in violation of 18 U.S.C. § 371.

On April 1, 2009, Flowers pled guilty pursuant to a Rule 11 plea agreement, and agreed to testify against her co-defendants.

That same day, Defendant was rearraigned in anticipation of entering a guilty plea. However, at the pretrial hearing, Defendant's counsel stated to the district court, "I believe [Defendant] is in a spot where he would like to proceed this afternoon and enter a plea." (R. 86, Tr. of Pretrial Hearing 4/1/09 at 2.) However, when asked directly by the district court, Defendant told the district court that he was "not happy with the plea agreement." (*Id*. at 3.) The district court verified that Defendant was making an informed decision to reject the plea agreement, stating, "[the district court] ha[s] an obligation to make certain that you've reviewed the plea agreement, that you reject it, and that you have so indicated here today." (*Id*. at 5.) Defendant responded, "yes, I reviewed it with my counsel, Your Honor, and I'm not happy with it. But it seems like it's the best thing for me to do, but no, I'm not happy with it at all." (*Id*.) Even after the government pressed the district court to nevertheless accept Defendant's guilty plea because "defendant's last statement was that he believes that taking the plea agreement is the best thing for him," (*id*. at 6), the district court refused to accept a guilty plea from Defendant on April 1, 2009, stating that it was "not taking a plea from a defendant [who] is not fully accepting of the terms and conditions . . . . Unless [Defendant] willingly wants to accept and affirmatively indicates that he wants to accept this plea agreement, then we are not going there." (*Id*.)

On April 2, 2009, the following day, co-defendant Davis entered a guilty plea and agreed to testify against Defendant.

3

The district court scheduled Defendant's trial for June 22, 2009. In response, the government filed a motion requesting that the district court continue the sentencing hearings of Defendant's co-defendants who had agreed to testify at Defendant's trial. The district court granted the government's motion to continue Flowers' and Davis' sentencing hearings until July 1, 2009.

On June 22, 2009, voir dire commenced in Defendant's trial. On June 23, 2009, after the jury was empaneled, but before attorneys' opening statements, Defendant informed the district court that he wanted to plead guilty. Defendant stated,

> I have five kids . . . . I'm a father. I need to do what's best, I think, for my family . . . . I mean, coming here with one [defense] witness, it's five against me. I can't do that. I've got to think about my family. I've got to do what I believe may be smart even if it against my morals or against what I believe, or what I think. I've got to do what's smart.

(R. 72, Tr. of Trial/Change of Plea Hearing 6/23/09 at 9.) The district court replied that it was hesitant to accept Defendant's guilty plea, stating,

> Sir, I don't want you to enter a plea to a charge and also at the same time indicate to the [c]ourt that you're not guilty of the offense because if you're not guilty of this charge, or if you believe that you're not guilty and you didn't commit these acts, then we should go forward and present the matter to the jury, let a jury decide your guilt or innocence. In terms of your plea, if you wish to enter a plea today, if I'm convinced that you've had sufficient time to discuss that decision with your attorney, then I'm willing to entertain it. But candidly, you're going to be asked, and I will ask you directly before I will accept the plea, did you do the things the government alleges. This will be an admission of guilt in your case . . . . You're asking the Court to take a plea, and in essence admit that you engaged in the criminal conduct the government alleges. So if you're not . . . prepared to do that, you wish to assert your innocence, then you should go forward, present your case to a jury. If you . . . are convinced at this time you wish to acknowledge you engaged in wrongful conduct, you committed these acts, then I'll take the plea.

(*Id*. at 9-10.) Defendant responded, "I'm going to take the plea, Your Honor." (*Id*. at 12.)

Prior to accepting Defendant's guilty plea, the district court verified that Defendant's guilty plea was voluntary by discussing with Defendant the charges against him, the rights Defendant was waiving by pleading guilty, and the range of possible penalties. First, the district court outlined the elements of the offenses with which Defendant was charged, and the government outlined the evidence it was prepared to present at trial to demonstrate Defendant's guilt. (*See id.* at 14-15, 27.) Second, the district court explained that by pleading guilty, Defendant "could be deprived of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury." (*Id*. at 16.)

Next, the district court reviewed the potential penalties for the offenses. The district court explained that two of the offenses carried a twenty year statutory maximum sentence, and that one carried a five year statutory maximum sentence. (*See id*. at 18.) The district court further explained that Defendant's advisory guidelines range was likely to be either 18 to 24 months, 33 to 41 months, or 41 to 51 months. However, the district court emphasized that prior to the preparation of a Presentence Investigation Report ("PSR") it could not know what Defendant's advisory guidelines range would be and that, in any event, these guidelines ranges were merely advisory. (*See id*. at 17-22.)

Finally, the district court explained that Defendant was waiving several constitutional rights by entering a guilty plea. The district court explained, "obviously you're giving up your right to a trial to a jury here." (*Id*. at 23.) The district court elaborated on the trial rights that Defendant was waiving by entering a guilty plea, stating,

> if there were a trial in this matter, you would be presumed innocent. The government would be required to prove you guilty of these offenses beyond a reasonable doubt

. . . . [And] if there were a trial in this case, witnesses for the government would be required to come forward here and testify in your presence. Your attorney could cross-examine those witnesses, ask questions on your behalf. He could object to any evidence the government offers in the matter, and he could offer evidence on your behalf if you so chose. You're not required to present any evidence, but you would have that right if you wished . . . . [I]f there were a trial in this case, you could call witnesses to testify [o]n your own behalf . . . . You would have a right to testify, if you wished . . . . You would also have a right not to testify.

(*Id*. at 23-25.)

In addition to detailing the above, the district court further verified the voluntariness of defendant's plea, inquiring,

You're sure [that you would like to plead guilty] . . . . Now, if you're not admitting that you did these things, if you're innocent or you believe you are not guilty of these offenses, then we will go forward with trial . . . . Either way, the jury is empaneled. They're here today. But if you wish to maintain your innocence, then we will go forward and present the matter to a jury. If you are admitting that you are guilty of these crimes, these offenses, then I'll accept the plea. But I'm not . . . going to accept a plea from an individual who . . . believes he is not guilty, or innocent of these offenses Because then we will go forward. Again, that's what the jury is here for, to decide your guilt or innocence.

(*Id*. at 15-16.)

At all times during the plea colloquy, Defendant maintained that he understood the crime to which he was pleading, and all of the consequences of his plea. The district court then accepted Defendant's guilty plea.

Defendant's co-defendants were subsequently sentenced on July 1, 2009, as Defendant's guilty plea rendered continuing their sentencing hearings unnecessary.

On September 22, 2009, Defendant moved to withdraw his guilty plea. In his motion to withdraw, Defendant set forth two reasons for requesting withdrawal: (1) Counsel was unaware that the Defendant would be subject to the two level enhancement to his offense level for obstruction of

justice contained in the second PSR, "[a]s such, counsel could not properly advise Mr. Sharp that such a possible upward departure existed in this case. Without such knowledge, Mr. Sharp cannot enter into a knowing and intelligent[] guilty plea without knowing that such an upward departure existed," (R. 71, Mot. to Withdraw Guilty Plea at 3.); and (2) Defendant asserted that he was innocent of the crimes to which he pled guilty.

The district court denied Defendant's motion to withdraw on October 1, 2009, Defendant's scheduled sentencing date. Prior to denying Defendant's motion to withdraw his guilty plea, the district court noted that "[D]efendant does not have an absolute right to withdraw his guilty plea and has the burden of proving that he's entitled to withdraw it." (R. 90, Tr. of Proceedings 10/1/09 at 4.) The district court then explicated its denial of Defendant's motion to withdraw his guilty plea, stating,

> defendant's motion to withdraw his guilty plea was filed 91 days after the entry of his guilty plea, nine days before he was sentenced. So the [district] court would note there's a substantial period of time [that] has passed from the time of the plea to the motion to withdraw . . . . [I]n this case, the basis of the defendant's desire to withdraw his guilty plea is primarily because the government has sought a two-level enhancement under the advisory guidelines for obstruction of justice . . . . This court at the time of the plea hearing advised the defendant as to an advisory guideline calculation. Of course the court did not include the two-level obstruction enhancement, but I did fully advise the defendant of the fact that I would not know specifically what the possible sanction would be until the presentence report was prepared. More importantly, I also fully advised the defendant of the fact [that] the [district] court would have to consider various statutory factors with regard to sentencing, the guidelines being one of them . . . . Counsel [for the defendant], in his brief to the [district] court, has argued that the defendant has consistently asserted his innocence. That is not the case . . . . [At] various times he has said he was innocent, and [on] other occasions, he has indicated [that] he was not innocent. And, under oath, sworn to tell the truth, having been admonished of the possible consequences of failing to tell the truth, admitted his guilt in this matter.

(*Id*. at 6-8.) The district court also noted that "defendant has [an] extensive, extensive history [with] the criminal justice system, both in the state and the federal systems. He has 16 prior convictions . . . . He has a prior federal conviction, so he is well aware, fully aware, of the ramifications of a guilty plea and aware of all the matters regarding the criminal justice system." (*Id*. at 8-9.) Finally, the district court discussed "the potential prejudice to the government if the motion to withdraw is granted." (*Id*. at 9.) The district court stated that while this was,

> not an overriding concern, the government has outlined the fact that indeed there will be some prejudice to the government, the fact that two [co-defendants] have been previously sentenced. That sentencing was delayed until the trial of this matter was completed, and also the prejudice to the government's agents having to reschedule and appear, and last but not least, although its not prejudice to the government, the [district] court is also mindful of the fact I believe over 30 jurors were . . . summoned, and then came to this court, participated in a day-long process to select this jury. In these economic times, those jurors losing their money and time away from their employment and family . . . while perhaps not one of the factors listed . . . . certainly is also worth noting as I consider the defendant's motion.

(*Id*. at 9-10.)

Therefore, the district court denied Defendant's motion to withdraw his guilty plea, and proceeded with Defendant's sentencing hearing.

Prior to sentencing Defendant, the district court accepted Defendant's admission that he committed the instant crimes while on supervised release for a prior federal counterfeiting conviction. In so doing, the district court explained that in addition to sentencing Defendant for the instant crimes, "the [district] court also has the discretion to impose a sentence for [Defendant's] supervised release violation . . . . The [district] court can impose two years for the supervised release violation. And under the guidelines, the [district] court could impose a revocation, range of imprisonment of 21 to 27 months." (*Id*. at 12.)

The district court calculated Defendant's offense level at 15, and his Criminal History Category at VI. This calculation rendered an advisory guidelines range of 41 to 51 months. In sentencing Defendant, the district court stated that it was "required to impose a sentence that's sufficient, but not greater than necessary, to comply with the purposes of 18, United States Code, Section 3553(a), and consider and address all of the factors set forth in the statute as it relates to this matter." (*Id*. 24-25.) The district court proceeded to address the relevant § 3553(a) factors.

In its analysis, the district court "[began] with the nature and the circumstances of this offence . . . [which] was part of a conspiracy that the defendant would manufacture counterfeit United States currency . . . and sell[] counterfeit currency from his residence." (*Id*. at 25-26.) The district court described the details of Defendant's counterfeiting operations, and stated that Defendant was observed by special agents attempting to manufacture counterfeit currency both in his residence and in Flowers' residence, and advising his co-defendants "about the quality and color of counterfeit currency." (*Id*. at 27.) Special agents also observed $350 in counterfeit federal reserve notes in Defendant's residence and wallet.

Next the district court addressed Defendant's history and characteristics. The district court stated that Defendant was,

> 35 years old. He has one prior juvenile adjudication for carrying a concealed weapon and 16 prior adult convictions, varying from driving under suspension, conspiracy to make, utter and possess counterfeit securities of an organization, obviously a federal offense . . . . The only time this defendant has not been engaged in some form of illegal unlawful activity is when he's been incarcerated . . . . he has violated the law repeatedly without any compulsion throughout his entire adult life . . . . The defendant has not exhibited any signs of violence in the past or any indication of suffering from any type of abuse. He obtained a GED and was maintaining employment at the time of his arrest with New Generations Auto Body in Cleveland, Ohio. The defendant has substance issues, clearly, beginning at age 16. He admitted

9

> using marijuana and PCP.  He has been through drug programs; however, recently referred to Fresh Start for additional drug counseling . . . .  The defendant has four children he reports seeing on a regular basis.

(*Id*. at 28-29.)

The district court next addressed "[t]he need for the sentence imposed." (*Id*. at 30.)  In connection with this § 3553(a) factor the district court stated, "[a]s I've already noted, this defendant has been involved in the legal system since the age of 17.  Since that time, the defendant has incurred adult convictions, serving custody in time on several of his convictions, with the longest period of incarceration being 33 months.  He was on federal supervised release at the time of the instant offense." (*Id*.)  Moreover, the district court noted that,

> none of the sanctions have deterred this defendant, and as I've already outlined . . . this defendant is in no way deterred from just continuing to commit to violate the law.  He goes to prison. He comes back out, goes right back to violating the law.  Nothing has been done to deter him in any way.  The defendant is a threat to the public with his financial schemes in our already poor economy, h[i]s continued drug use, could lead to further criminal activities and even violence.

(*Id*. at 31.)  "Therefore," concluded the district court, "a sentence at the high end of the guideline range or even higher, if I wish to vary . . . is necessary to protect the public and deter this defendant, provide appropriate punishment and to allow him to address his long-time addiction." (*Id*.)

The district court proceeded to sentence Defendant to a term of 51 months of imprisonment on each of his three offenses, to be served concurrently, followed by three years of supervised release.  Furthermore, the district court imposed a term of 24 months of incarceration for Defendant's violation of his supervised release on his prior federal conviction to be served consecutively with his 51 month sentence.  The district court stated that "perhaps [the consecutive sentences] will allow the defendant an opportunity to obtain further training, treatment for his drug

addiction and perhaps provide some deterrent effect and prevent him from once again continuing to violate the law and again, hopefully, that will be of some benefit to him." (*Id*. at 36.) The district court also noted that Defendant owed $31,126.98 in restitution pursuant to his prior counterfeiting conviction, and made restitution of that sum a condition of Defendant's supervised release in the instant case.

Finally, at the conclusion of Defendant's sentencing hearing, the district court asked Defendant if he objected to the sentence. (*See id*. at 38.) Defendant responded that he did not have any objections.

Defendant timely appealed both the district court's denial of his motion to withdraw his guilty plea, and his sentence.

## DISCUSSION

### I.       Motion to Withdraw Guilty Plea

#### A.       Standard of Review

"This Court reviews a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. Abuse of discretion results when the district court relies on clearly erroneous findings of fact, improperly applies the law or uses an erroneous legal standard." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (internal citations omitted). Moreover, "[t]his Court may also find an abuse of discretion if the district court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id*. (internal citations omitted).

#### B.       Analysis

As a general matter, we have noted that "[t]he withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice." *Id*. Therefore, "[w]hen a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *Id*. This Court has stated that "[a] defendant does not have an absolute right to withdraw a guilty plea and bears the burden of proving that he is entitled to withdraw his guilty plea." *Id*.

Federal Rule of Criminal Procedure 11(d)(2)(B) permits a defendant to "withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." We have reiterated that "[t]his rule is designed to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *Ellis*, 470 F.3d at 280-81. *See also United States v. Haygood*, 549 F.3d 1049, 1052-53 (6th Cir, 2008); *United States v. Lineback*, 330 F.3d 441, 443 (6th Cir. 2003). Thus, "[w]ithdrawal of a plea is appropriate where there is a real confusion or misunderstanding of the terms of the agreement." *Id*. at 281.

In determining whether a defendant has met the Rule 11(d)(2)(B) standard, and articulated a reason for withdrawal of his guilty that is fair and just, this Court looks to a set of seven factors:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007) (citing *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)).  However, "the factors listed are a general, non-exclusive list and no one factor is controlling."  *Ellis*, 470 F.3d at 286.

Application of the factors to the instant case demonstrates that the district court did not abuse its discretion in denying Defendant's motion to withdraw his guilty plea.

Regarding the first factor, the amount of time that elapsed between the guilty plea and the motion to withdraw, this Court has stated that "[t]he shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reason for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time."  *Id*.  Defendant moved to withdraw his guilty plea 91 days after pleading.  This Court has "frequently relied on much shorter delays for upholding a withdrawal denial."  *Dixon*, 479 F.3d at 436.  *See, e.g., United States v. Valdez*, 362 F.3d 903 (6th Cir. 2004) (upholding a denial of a motion to withdraw due to a 75 day delay); *United States v. Durham*, 178 F.3d 796 (6th Cir. 1999) (upholding a denial of a motion to withdraw due to a 77 day delay); *United States v. Baez*, 87 F.3d 805 (6th Cir. 1996) (upholding a denial of a motion to withdraw due to a 67 day delay).  Moreover, Defendant failed to proffer any reason explaining his 91 day delay in moving to withdraw his guilty plea.  Defendant's unexplained delay weighs against him, and supports upholding the district court's denial of his motion to withdraw.

The district court further noted that the jury was already empaneled prior to Defendant's entry of the guilty plea.  Although Defendant asserts that the district court improperly considered this fact in denying his motion to withdraw, the district court did not err in considering this fact in its analysis.

This Court has stated that the list of enumerated factors is not exhaustive. *See Ellis*, 470 F.3d at 281. Thus, a district court may consider any additional facts relevant to determining whether permitting a defendant to withdraw his guilty plea is mandated by justice. In this case, the jury was already empaneled prior to Defendant's entry of the guilty plea, and the government had prepared for Defendant's trial prior to Defendant's plea. These facts highlight the effect of Defendant's delay, and further weigh in favor of denying Defendant's motion to withdraw.

Regarding the third factor, Defendant did assert his innocence in his motion to withdraw his guilty plea, stating, "Mr. Sharp has consistently asserted his innocence in this case." (R. 71, Mot. to Withdraw Guilty Plea at 3.) However, the circumstances surrounding Defendant's guilty plea undercut Defendant's assertion of innocence in his motion to withdraw. Initially, on April 1, 2009, the district court refused to entertain Defendant's guilty plea, stating that it would not "tak[e] a plea from a defendant that is not fully accepting of the terms and conditions." (R. 86, Tr. of Pretrial Hearing 4/1/09 at 6.) In light of Defendant's initial reticence, the district court was circumspect in its inquiry regarding Defendant's innocence. Prior to accepting Defendant's guilty plea, the district court asked Defendant several times whether he "did . . . the things the government alleges," (R. 72, Tr. of Trial/Change of Plea Hearing 6/23/09 at 10), "underst[ood] . . . that [he was] entering a plea of guilty to all the counts of the indictment," (*id* at 14), and "[was] pleading guilty . . . to these three offenses because [he was] in fact guilty of these three crimes." (*Id.* at 15.) Therefore, although Defendant asserted his innocence in his motion, in view of the plea colloquy in the district court, this assertion rings hollow.

Furthermore, both Defendant's background, and his prior experience with the criminal justice system weigh in favor of upholding the district court's denial of Defendant's motion to withdraw. Defendant's periodic experience with the criminal justice system, described by the district court, suggests that Defendant was not unsure of the ramifications of his guilty plea, but rather that he pled guilty fully understanding the consequences of doing so. Defendant's background, and experience with the criminal justice system thus also weigh in favor of upholding the district court's denial of Defendant's motion to withdraw.

The seventh factor, potential prejudice to the government, also points to the fact that the district court did not abuse its discretion in denying Defendant's motion to withdraw. Prior to Defendant's guilty plea, the government had arranged for the district court to continue Defendant's co-defendants' sentencing because they were cooperating with the government, and had agreed to testify against Defendant at trial. Subsequent to Defendant's guilty plea, but prior to Defendant's motion to withdraw, the district court sentenced Defendant's co-defendants. Granting Defendant's motion to withdraw, and requiring the government to try Defendant in the instant case, would prejudice the government as it would have to arrange for the co-defendants, who may not be as cooperative post-sentencing, to testify.

Finally, Defendant's stated reason for moving to withdraw his guilty plea was that at the time of Defendant's plea, "there was no suggestion of a two level enhancement for an upward departure based upon obstruction of justice," and that "[w]ithout such knowledge, Mr. Sharp [could not] enter into a knowing and intelligent[] guilty plea." (R. 71, Mot. to Withdraw Guilty Plea at 2-3.) Although it is true that the district court did not inform Defendant at the time of his guilty plea that

he was exposed to this particular enhancement, the district court did thoroughly explain to Defendant the range of sentences to which he was exposed. Prior to accepting Defendant's guilty plea the district court explained that two of the offenses to which Defendant was pleading guilty carried a statutory maximum sentence of 20 years of imprisonment. (*See* R. 72, Tr. of Trial/Change of Plea Hearing 6/23/09 at 17.) Moreover, the district court explained that it was uncertain of Defendant's advisory guidelines range. (*See id*. at 20.) The district court also stated that the guidelines range was advisory, and enumerated the § 3553(a) factors it would consider in determining Defendant's sentence. (*See id*. at 18-19.) Defendant was sentenced to 52 months of imprisonment, within the range discussed by the district court at Defendant's June 23, 2009 plea colloquy. Rather, Defendant's stated reason for moving to withdraw his guilty plea is exactly the type of tactical reconsideration prohibited by this Court. *See Ellis* 470 F.3d at 281.

### C.      Summary

The district court did not abuse its discretion in denying Defendant's motion to withdraw his guilty plea.

### II.      Procedural and Substantive Reasonableness of Defendant's Sentence

### A.      Standard of Review

This Court "review[s] all sentences – whether inside, just outside, or significantly outside the Guidelines range – under a deferential abuse-of-discretion standard." *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). This reasonableness review "has two components: procedural and substantive." *Id*. "Consequently, our reasonableness review requires inquiry into both the length of the sentence and the factors evaluated and the procedures employed by the district court in

reaching its sentencing determination." *United States v. Herrera-Zuniga*, 571 F.3d 568, 581 (6th Cir. 2009).

In reviewing a challenge for procedural reasonableness, this Court applies one of two standards of review. This Court reviews preserved sentencing challenges "under a deferential abuse-of-discretion standard for reasonableness." *Id.* However, "[w]here a defendant fails to properly preserve an issue for appeal, that claim is subject to a review for plain error only." *Id.* at 580.

**B.     Analysis**

Defendant challenges the procedural and substantive reasonableness of his sentence. Specifically, Defendant asserts that his sentence is unreasonable for two principal reasons: (1) that the district court only considered disparities with Defendant's co-defendants' sentences in considering 18 U.S.C. § 3553(a)(6); and (2) that Defendant's 51 month sentence is substantively unreasonable.

**1.     Procedural Reasonableness**

Prior to evaluating the procedural reasonableness of Defendant's sentence, this Court must "determine what standard of review applies" by "determin[ing] whether [Defendant] preserved these claims for appeal." *Herrera-Zuniga*, 571 F.3d at 578. As this Court held in *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), "district courts are required, after announcing sentence, to ask the parties whether they have any objections to the sentence that have not previously been raised." *Herrera-Zuniga*, 571 F.3d at 578. If the defendant fails to raise an error "[w]here the sentencing judge complies with this procedure, the defendant generally forfeits the right to challenge on appeal any procedural errors to which he did not object at the time of sentencing." *Id.* Unpreserved

procedural challenges will be reviewed for plain error only. *Id.* at 581. In this case, Defendant admits that he did not preserve the instant procedural challenges, and that this Court should review his claims for plain error.

To establish plain error, "a defendant must show (1) error[,] (2) that was obvious or clear, (3) that affected defendant's substantial rights[, and] (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).

"This Court's opinion in *Vonner* shows that plain error review should be extremely deferential to the sentencing judge." *United States v. Wallace*, 597 F.3d 794, 804 (6th Cir. 2010) However, the *Vonner* "majority acknowledged that the crucial question is 'whether the record makes clear that the sentencing judge . . . was fully aware of the defendant's circumstances and took them into account in sentencing him.'" *Id.* (quoting *Vonner*, 516 F.3d at 387). *Vonner* "emphasize[s] that the record must make clear that the sentencing judge considered the evidence and arguments" in sentencing Defendant. *Id*. at 805 (same).

Procedural reasonableness review "begins with a robust review of the factors evaluated and the procedures employed by the district court in reaching its sentence." *Bolds*, 511 F.3d at 578. Specifically,

> [i]n reviewing sentences for procedural reasonableness the Court must ensure that the district court: (1) properly calculated the applicable advisory Guideline range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range.

*Id*. at 581.

In reviewing the district court's application of the § 3553(a) factors "there is no requirement . . . that the district court engage in a ritualistic incantation to establish consideration of a legal issue," or that it "make specific findings relate to each of the factors considered." *Id*. However, in order for a sentence to be procedurally reasonable "the record must contain the district court's rationale for concluding that the sentence imposed is sufficient but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *Id*. The district court must provide an "articulation of the reasons [why it] reached the sentence ultimately imposed." *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005). This Court has further explained that, "[s]imply listing the § 3553(a) factors and various characteristics of the defendant without referring to the applicable Guidelines range or explaining the decision to stay within or deviate from that range is insufficient." *Bolds*, 511 F.3d at 580 (quoting *United States v. Cousins*, 469 F.3d 572, 577 (6th Cir. 2006)). Instead, to be procedurally reasonable, "[t]he district court must provide a clear explanation of why it has . . . chosen the particular sentence imposed, regardless of whether it is within or outside of the Guidelines." *Id*.

Section 3553(a)(6) requires sentencing courts to "consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar criminal conduct." Moreover,

> [i]n considering a sentencing judge's obligation to address sentencing disparities under § 3553(a)(6), this Court has been clear that, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, does not apply to co-conspirators. This factor concerns national disparities between defendants with similar criminal histories convicted of similar conduct.

19

*Wallace*, 597 F.3d at 803 (internal quotations and citations omitted).

In this case, Defendant contends that his "sentence [is] procedurally unreasonable because the [district] court, in evaluating sentencing disparities, utilized the [Defendant's] co-defendants, instead of other similarly situated defendants nationally in determining this factor." (Br. of Appellant at 21.) It is true that in sentencing Defendant the district court stated that as to Defendant's

> two [co-defendants], there's an argument that the sentence the court would impose would be disparate between the sentence of the [co-defendants], a 16-month sentence on one defendant and a one-day sentence on the other defendant. However, it must be noted that the [co-defendants] had Criminal History Category I and III. They received a reduction for acceptance of responsibility, they received reduction for substantial assistance. Neither of those defendants in any way have the kind of record this defendant has, nor do they in any way approach his prolific criminal conduct.

(R. 90, Tr. of Proceedings 10/1/09 at 32.)

This Court has stated that in sentencing a defendant, "[a] district judge is not required to consider the disparity between the sentences of co-defendants. A district judge, however, may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence." *Wallace*, 597 F.3d at 803. However, to be procedurally reasonable, "[t]he district judge is . . . under a more rigorous duty to make explicit its consideration of the factors when a defendant makes a particular argument." *United States v. Simmons*, 501 F.3d 620, 625 (6th Cir. 2007).

In his sentencing memorandum to the district court, Defendant pointed out that he "was indicted with two other individuals in a conspiracy to manufacture counterfeit money . . . . According to the PSR, [co-defendant] Mr. Davis received 16 months [incarceration]. [Co-defendant] Ms. Flowers received one day in custody." (R. 70, Def.'s Sentencing Mem. at 4.) Defendant further

argued that "[t]he PSR suggests a sentence of 51-63 months in this case for Mr. Sharp, the disparity in sentences is obvious." (*Id*. at 5.)

It appears that the district court addressed the disparity in Defendant's sentence as compared to those of his co-defendants' because Defendant raised the disparity in his sentencing memorandum to the district court. Moreover, Defendant did not argue before the district court that his sentence was disproportionate to those of defendants nationwide. Therefore, the district court was not under a specific obligation to address this argument in discussing the § 3553(a) factors at Defendant's sentencing. *See Simmons*, 501 F.3d at 625 (stating that when not raised by a defendant, a district court need not address every § 3553(a) factor in detail).

The district court thus did not plainly err in its discussion of 18 U.S.C. § 3553(a)(6).

### 2.     Substantive Reasonableness

Defendant also challenges the substantive reasonableness of his sentence. This Court's review of a sentence for substantive reasonableness "requires inquiry into . . . the length of the sentence and the factors evaluated . . . by the district court in reaching its sentencing determination." *Herrera-Zuniga*, 571 F.3d at 581.

In contrast to the requirements for procedural reasonableness review, a defendant "is not required to object to the substantive reasonableness of his sentence to preserve the issue for appeal." *Id*. at 578. Review for substantive reasonableness review focuses on the appropriateness of "the length of the sentence," *id.* at 581, and scrutinizes whether a sentence is adequate, but not "greater than necessary to accomplish the sentencing goals identified by Congress in 18 U.S.C. § 3553(a)." *Id*. at 590. This Court has elaborated that, "[a] sentence may be considered substantively

unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Presley*, 547 F.3d 625, 630-31 (6th Cir. 2008).

The substantive reasonableness inquiry "take[s] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Bolds*, 511 F.3d at 581. In this inquiry the Court "appl[ies] a rebuttable presumption of substantive reasonableness" to "sentences within the Guidelines." *Id*. Moreover, this Court has clarified that, "[r]egardless of whether [this Court] would have imposed the same sentence, [this Court] must afford due deference to the district court's decision to determine the appropriate length of defendant's sentence, so long as it is justified in light of the relevant § 3553(a) factors." *Herrera-Zuniga*, 571 F.3d at 591.

As discussed above, the district court provided ample reasons for setting Defendant's sentence at 51 months. In its discussion of the § 3553(a) factors during Defendant's sentencing hearing the district court expressed concern with Defendant's high rate of recidivism. The district court stated, "this defendant has been involved in the legal system since the age of 17, since that time, the defendant has incurred adult convictions, serving custody in time on several of his convictions . . . . He was on federal supervised release at the time of the instant offense." (R. 90, Tr. of Proceedings 10/1/09 at 30.) However, explained the district court,

> none of the sanctions have deterred this defendant . . . this defendant is in no way deterred from just continuing to . . . violate the law. He goes to prison, he comes back out, goes right back to violating the law. Nothing has been done to deter him in any way. The defendant is a threat to the public with his financial schemes in our already poor economy, has continued drug use, could lead to further criminal activities and even violence.

(*Id*. at 31.) Based on these facts, the district court concluded that, " a sentence at the high end of the guideline range or even higher, if I wish to vary . . . is necessary to protect the public and deter this defendant, provide appropriate punishment and to allow him to address his long-time addiction." (*Id*.)

Thus, in the district court's view, Defendant's 51 month sentence was necessary in light of the § 3553(a) factors, especially Defendant's history of recidivism.

### C. Summary

The district court did not abuse its discretion in sentencing Defendant to 51 months of imprisonment.

### III. Consecutive Sentences

### A. Standard of Review

We review "[t]he district court's decision whether to impose a concurrent or consecutive sentence . . . for abuse of discretion." *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009). Moreover, a district court "does not abuse its discretion when it makes clear the rationale under which it has imposed the consecutive sentence and seeks to ensure an appropriate incremental penalty for the instant offense." *Id*. (quoting *United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998)).

### B. Analysis

When a district court is sentencing a defendant with a prior undischarged sentence, "the district court may impose a consecutive or concurrent sentence." *Id*. However, this Court has admonished that "[a]lthough a district court retains discretion in imposing a consecutive or

concurrent sentence, such discretion is not unfettered and the record on appeal should show that the district court turned its attention to § 5G1.3(c) and the relevant commentary in its determination of whether to impose a concurrent or consecutive sentence." *Id*. Moreover, "the [district] court must make generally clear the rationale under which it has imposed the consecutive sentence and seeks to ensure an appropriate incremental penalty for the instant offense." *United States v. Sawyers*, 360 F. App'x 621, 624 (6th Cir. 2010) (quoting *Owens* 159 F.3d at 230).

In determining whether consecutive or concurrent sentences are appropriate, "[t]he [district] court must consider the factors listed in 18 U.S.C. § 3553(a) in making the determination. Furthermore, the [district] court should also consider the relevant Guidelines recommendations and policy statements." *Berry*, 565 F.3d at 342. The application notes to the guidelines also provide guidance for determining whether to impose consecutive or concurrent sentences. Relevant to this case is Application Note 3(C), which "provides that when a defendant is on federal or on state parole or supervised release at the time of the instant offense, 'the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation.'" *Id*. (quoting Application Note 3(C) to U.S.S.G. § 5G1.3(c)).

Notwithstanding a district court's requirement to take the § 3553(a) factors and the relevant guidelines provisions into account in imposing consecutive sentences, in reviewing the district court's decision, this Court views the sentencing record in its entirety, and does not require the district court to engage in a separate explicit consideration of the relevant statutory and guidelines provisions in imposing consecutive sentences. This Court,

> has never held that a district court is required to repeat Section 3553(a) analysis in
> its consideration of the consecutive or concurrent nature of a sentence . . . Requiring

the district courts to conduct a separate Section 3553(a) analysis for the concurrent or consecutive nature of the sentence would be repetitions and unwarranted . . . district courts have no such distinct obligation.

*Id*. at 343.

In this case, the district court systematically considered each of the § 3553(a) factors prior to announcing Defendant's sentence. Moreover, the district court expressed concern regarding defendant's history of recidivism, and the fact that Defendant remained undeterred by his prior convictions and sentences. (*See* R. 90, Tr. of Proceedings 10/1/09 at 31.) "Therefore," concluded the district court, a sentence at the high end of the guideline range or even higher, if I wish to vary . . . is necessary to protect the public and deter this defendant, provide appropriate punishment and to allow him to address his long-time addiction." *Id*.

Furthermore, immediately prior to announcing Defendant's sentence the district court stated:

I will now turn to the . . . supervised release violation and impose a sentence for that violation . . . . In this case, the application of policy statements found in Chapter 7 in the guideline manual result in a range of imprisonment of 21 to 27 months. That range of imprisonment is based upon the most serious violation, and the defendant having a Criminal History Category VI. Pursuant to the United States Sentencing Guidelines 7B1.3(f), any terms of imprisonment the court imposes upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment the offender is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the bases of the revocation, probation or supervised release. In this case, the court will not revisit, although I will touch upon again, the 3553(a) factors in imposing a sentence. I've already addressed them. Most, if not all of the factors the court addressed in imposing a sentence in the underlying case apply in this matter. Most importantly, the need for the sentence imposed, just punishment, adequate deterrence, protect the public, reflect the seriousness of the offense, including the offender's conduct and condition."

(*Id*. at 35-36.)

Based on these facts, and the district court's thorough analysis of the § 3553(a) factors, the district court sentenced Defendant to a 24 month term of incarceration for the supervised release violation, and a 51 month term of incarceration for the instant offense to be served consecutively. In so sentencing Defendant, the district court stated "perhaps [the sentence announced] will allow the defendant an opportunity to obtain further training, treatment for his drug addiction and perhaps provide some deterrent effect and prevent him from once again continuing to violate the law." (*Id.* at 36.)

It is true that the district court did not explicitly announce which sentencing factors it was considering in imposing Defendant's consecutive terms of imprisonment. However, the district court did consider the necessary aspects of Defendant's individual record, and repeatedly expressed its concern regarding Defendant's history of recidivism. In so doing, the district court "ma[d]e generally clear the rationale under which it has imposed the consecutive sentence." *Sawyers*, 360 F. App'x at 624.

### C. Summary

The district court did not abuse its discretion in imposing Defendant's 24 and 51 month terms of imprisonment consecutively.

### IV. Restitution as Precondition for Supervised Release

### A. Standard of Review

We review a district court's imposition of supervised released conditions for abuse of discretion. *See United States v. Modena*, 302 F.3d 626, 636 (6th Cir. 2002); *United States v. Bortels*, 962 F.2d 558, 560 (6th Cir. 1992) (per curiam).

## B.    Analysis

This Court has explained that "[w]e review the imposition of a special condition of supervised release along two dimensions.  One dimension is procedural: [t]he district court, at the time of sentencing, must state in open court the reasons for its imposition of the particular sentence, including its rationale for mandating special conditions of supervised release." *United States v. Carter*, 463 F.3d 526, 528-29 (6th Cir. 2006) (internal quotations and citations omitted).

The second dimension is substantive: "where a condition of supervised release is reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public, it must be upheld." *United States v. Thomas*, 212 F. App'x 483, 486 (6th Cir. 2007) (quoting *Bortels*, 962 F.2d at 560).  Therefore, "[a] sentencing court may impose a non-mandatory condition of supervised release only if it meets three requirements." *Carter*, 463 F.3d at 529.  We have detailed these three requirements as follows:

> First, the condition must be reasonably related to several sentencing factors.  These factors are the nature and circumstances of the offense and the history and characteristics of the defendant[,] and the need for the sentence imposed to afford adequate deterrence to criminal conduct[,] to protect the public from further crimes of the defendant[,] and to provide the defendant with needed vocational and educational training, medical care or other correctional treatment in the most effective manner.  Second, the condition must involve no  greater deprivation of liberty than is reasonably necessary for several sentencing purposes.  These purposes are to afford adequate deterrence to criminal conduct[,] to protect the public from further crimes of the defendant[,] and to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.  Third, the condition must be consistent with any pertinent policy statements issued by the Sentencing Commission.

*Id*.  Finally, "a condition must satisfy all three requirements[, h]owever, a condition need not satisfy every single factor and purpose within each of the first two requirements." *Id*.

In this case, the district court imposed restitution on Defendant at the behest of the government. After announcing Defendant's sentence, the district court asked whether there were "any other issues the court need[ed] to address?" (R. 90, Tr. of Proceedings 10/1/09 at 37.) The government responded, "Your Honor, since the court is terminating the supervised release on the 2003 case, the government would request that the court order payment of restitution on that case to be in order as part of his supervised release terms on the new case. He does jointly and severally owe more than $31,000 in restitution and has not made any payments to that to date." (*Id*.) Based on this request, the district court stated: "[w]e will do so. We will make that as a condition, as well as in the new case payment of restitution of $31,126.98." (*Id*.)

The district court did not explicitly address restitution in relation to the § 3553(a) factors, or Defendant's offense, however, the relationship is nonetheless clear based on the district court's thorough explication of its reason for imposing Defendant's 51 and 24 month sentences. The supervised release condition is reasonably related to the § 3553(a) factors discussed by the district court throughout the sentencing hearing. In imposing Defendant's sentence, the district court expressed concern over Defendant's history of recidivism, and expressed hope that his sentence in the instant case would deter Defendant from committing future crimes. (*See, e.g., id*. at 36.) Requiring Defendant to pay restitution as a precondition for supervised release was reasonably related to the district court's deterrence goals.

Furthermore, imposition of restitution for counterfeiting as a condition of supervised release for a counterfeiting conviction is reasonably related to the underlying counterfeiting offense. The

28

amount of restitution imposed as a condition of supervised release for the instant conviction was calculated based on Defendant's previous federal counterfeiting conviction. Both the conviction and the restitution are imposed for transgressing the same federal prohibition.

### C. Summary

The district court did not abuse its discretion in imposing restitution as a condition of Defendant's supervised release.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.