NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0218n.06

No. 25-3708

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 18, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) | |
| ALEXANDER BEATTIE, | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

LARSEN, Circuit Judge. Alexander Beattie was indicted on four firearm counts and one count of possessing child pornography. Beattie pleaded guilty as charged. The district court sentenced him to an above-Guidelines sentence of 210 months' imprisonment. Beattie now appeals, challenging the procedural reasonableness of his sentence. We AFFIRM.

I.

In February 2024, a confidential informant (CI) reported to an agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) that Alexander Beattie was manufacturing firearms and machine gun conversion devices using a 3D printer. The CI provided the agent with Beattie's phone number. The agent began communicating with Beattie regarding the potential sale and purchase of firearms or firearm pieces. Beattie eventually invited the agent to his home to see his production operation and told the agent he could prepurchase a firearm at that time. The agent met Beattie at his home and paid Beattie $400 to make an AR-style rifle. When talking with the agent about the legality of manufacturing such a weapon, Beattie explained, "If I get caught with

any of these, I'm f*cked." R. 25, Final PSR, PageID 225. Over the next two months, the agent and Beattie continued to communicate. The agent eventually returned to Beattie's residence, where he obtained the assault rifle he had ordered, purchased a second firearm, and pre-ordered a third. The agent picked up the third firearm from Beattie in September 2024. Each firearm lacked an identifiable serial number. Investigators searched Beattie's residence in November 2024 and seized the 3D printer, ammunition, and electronic devices.

A grand jury indicted Beattie on four firearm counts. After a search of Beattie's electronic devices uncovered over 900 still images and 50 videos of child pornography, the government added a count for possessing child pornography. Beattie pleaded guilty as charged.

The PSR calculated Beattie's Sentencing Guidelines range at 151 to 188 months. Prior to sentencing, the district court provided notice that it was considering an upward variance. At sentencing, the court agreed with the PSR's calculation of Beattie's Guidelines range. Beattie asked for a downward variance of 120 months, while the government asked for an above-Guidelines 210-month sentence. The district court agreed with the government and sentenced Beattie to 210 months' imprisonment. Beattie now appeals, challenging the procedural reasonableness of his sentence.

## II.

For a sentence to be procedurally reasonable, the district court "must properly calculate the [G]uidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). Normally, we review a procedural challenge for abuse of discretion. *Id.* But we review for plain error when the defendant fails to preserve the challenge.

*United States v. Parrish*, 915 F.3d 1043, 1048 (6th Cir. 2019). The parties dispute whether Beattie properly preserved his challenges. We need not resolve the dispute because the district court didn't err. *Id.*

In fashioning the sentence, the district court walked through the facts and circumstances leading to Beattie's arrest. It explained Beattie's lengthy criminal record, including his long list of juvenile adjudications, beginning at age 14. The court considered the severity of those offenses, including a breaking and entering felony offense, for which Beattie was given a suspended sentence and community service. The court noted that "[j]ust a mere review of his juvenile record indicates that he really wasn't suffering any consequence for his continued pattern of violating the law." R. 42, Sent'g Tr., PageID 411. The court then noted that, as an adult, Beattie had fourteen prior misdemeanor convictions and two prior felony convictions. The court explained that Beattie had a history of perpetrating violence and reviewed the circumstances underlying his three convictions for domestic violence. Finally, the court noted the "extraordinarily harmful" nature of his possession of child pornography. *Id.* at 417. On the other hand, the court acknowledged Beattie's serious mental health issues, including bipolar disorder and depression, and his issues with alcohol and drugs. And it considered other mitigating evidence, including that Beattie had earned his GED and had some employment history.

Considering all of the relevant factors, the court determined that an above-Guidelines sentence was necessary. The court acknowledged that sentences of defendants with similar convictions might call for a within-Guidelines sentence. But the court found this was "a very unique case," noting that "[a] combination of the various firearm offenses along with the child pornography is not a typical case." *Id.* at 420. As far as the need to protect the public, the court did not find "a whole lot in this record that would indicate that" Beattie would comply with the

law or be rehabilitated; "[t]o the contrary, there is a lot in the record to indicate he's just going to continue to be a dangerous individual" to his family members, to the community, and to those harmed by his possession of child pornography. *Id.* at 421. Beattie therefore was an "extremely high-risk defendant" warranting an above-Guidelines sentence. *Id.*

Despite the court's detailed explanation of the sentence, Beattie challenges its procedural reasonableness on three fronts, all related to facts or factors considered by the district court. *See Rayyan*, 885 F.3d at 440.

First, Beattie says the court erred in its conclusions regarding his criminal history. When noting that Beattie had "received very little consequence" for his prior convictions, the court speculated that some of Beattie's prior convictions were "misdemeanors because of, I would suspect, either plea negotiations or other factors, perhaps a victim not showing up and wanting to testify in the case of domestic violence." R. 42, Sent'g Tr., PageID 396. Defense counsel later objected and clarified that those convictions had not been pleaded down from felonies but had been charged as misdemeanors.

Regardless of the district court's initial misunderstanding regarding the misdemeanors, the court made clear that it understood that counsel was "right," Beattie had only "two felony convictions as described." *Id.* at 434. The court's ultimate point—that Beattie had not suffered meaningful consequences for his sustained pattern of violating the law—was a permissible factor for the court to consider. *See United States v. Herrera-Zuniga*, 571 F.3d 568, 588–89 (6th Cir. 2009). And the court's factual determination on that point was not clearly erroneous, given Beattie's lengthy criminal history containing sixteen prior convictions and, specifically, three domestic violence convictions. *See United States v. Green*, 167 F.4th 832, 856 (6th Cir. 2026) (Clear error is a "deferential" standard. (quotation omitted)).

Second, Beattie faults the district court for stating at sentencing that it "did not come on the bench with an idea of an upward variance at all" and that the court "didn't think that that was going to be appropriate," before ultimately imposing an upward variance. R. 42, Sent'g Tr., PageID 421. Beattie says that this was a clearly erroneous statement since the district court had provided notice prior to sentencing that it was considering an upward variance. Of course, the district court may just have meant that it had initially reconsidered its inclination toward a variance and then reconsidered again as the hearing unfolded. But in any event, Beattie does not say how this statement had any effect on his sentence. Nor can we ascertain any.

Third, Beattie argues that the district court relied on clearly erroneous facts when it misidentified the forum in which Beattie made statements critical of gun control legislation. During the investigation, law enforcement officers obtained Facebook messages that indicated Beattie's disagreement with gun control laws, including one that used the acronym "FGC," which stood for "F*ck Gun Control." R. 25, Final PSR, PageID 228. At sentencing, however, the district court indicated that the comments had been made to the probation officer while he was preparing the presentence report and found them "troublesome, to say the least." R. 42, Sent'g Tr., PageID 418. Because the district court misunderstood the facts, says Beattie, his sentence was procedurally unreasonable.

But the district court didn't err. After the court expressed its understanding of the comments' timing, the probation officer clarified that the comments had been uncovered during the investigation and had not been made to the probation officer. Defense counsel and the government agreed with the probation officer's statement of the facts. The court thanked the probation officer and the attorneys for their clarification. Later, when counsel objected to the

district court's reliance on the Facebook comments, the court responded in a manner showing that it understood when the comments had been made:

> It's relevant, *his mindset at the time that he was committing these crimes*, the Facebook posts, is clearly relevant as to his mindset as to his understanding . . . that he was violating the law by placing these firearms into the hands of convicted felons. He had a full understanding of that. And his Facebook posts are directly relevant to considering whether or not, again, what his future might be, to provide adequate deterrence, protect the public from his future acts when he is released.

*Id.* at 433 (emphasis added). The court may have initially misunderstood when the comments were made, but the court had the facts straight by the time it imposed the sentence. And such comments, the district court appropriately recognized, were relevant to at least two sentencing factors— providing adequate deterrence and protecting the public from future crimes. *See* 18 U.S.C. § 3553(a)(2)(B), (C).

Beattie's sentence was procedurally reasonable. So we AFFIRM.